Mr. Yoffe, you may proceed. Your Honors, may it please the Court, Attorney Yoffe for the petitioners, thank you for accommodating me and allowing me to appear on video. I would like to reserve two minutes of my time, if possible, for rebuttal. You may, but just keep an eye on your time. Certainly, Your Honor. This case is a credibility-based case, Your Honors. Certainly, we understand that in such cases, there is tremendous deferral to the agency decision, but I believe in this case presents circumstances that would allow the Court to find the petitioner is correct and should prevail. We believe that in this case, substantial evidence does support the finding that the Board heard. Let me just stop you just a minute, and I'm not trying to stop your argument necessarily, but as I read what we're doing here, we had the BIA who was denying the application, and it was on adverse credibility grounds. It affirmed the IJ's adverse credibility determination, but as I understood it, it cited the entirety of the determination. Would you agree with that? So it's like a verbena, really, determination. I disagree, Your Honor. Well, look at AR 65 to 69, where it says that they were affirming for example, talks about for example, but then after it gets through, it goes and says, and I quote, and that's why I'm really getting you at it, and I quote what they said. They said, in effect, and it is based on the entirety of what the IJ did. Your Honor, my argument was that the Board did not, that they only reviewed the credibility judge's decision, and they Well, I can understand that, and I'm not trying to get us past that. I'm just trying to say, when I look at the determinations paid by the IJ for credibility, it seems I'm looking at all of those determinations based on that language. Right, well, the reason I would disagree, Your Honor, is because the Board did not analyze all the arguments put forth by the Board and argue Just because they don't analyze them doesn't mean they don't rely on them. I mean, if they say verbena, but then they go on and talk about a lot of things that are in the record, but they don't talk about all of them, it doesn't stop me from looking at all of them. It doesn't, Your Honor. In this instance, they didn't say the magic words, but they did say, and I quote, we will uphold the IJ's adverse credibility, although it is not clearly erroneous, and then they go on specific cogent reasons, and then they go on further and say, although I don't think, you know, nonetheless, however, that is the whole of the IJ's credibility analysis. Right, Your Honor, then how come they did not center and focus on the main reasons found by the IJ? There were much more significant reasons found by the IJ that the prior attorney argued about on appeal, and the Board did not mention any of those reasons, which makes me think it's not a verbena type of decision, Your Honor, because they specifically identified. What is it that I'm supposed to, based on your argument here, look at? Only the things they said for the foregoing reasons? Yes, Your Honor. That's just our position, Your Honor, because, for instance, the judge found them to be economic migrants. The judge kind of speculated a lot. The judge said that the respondent is prone to exaggeration, and the judge pointed out that they lied on their visa, and the Board did not seek to base their decision on any of those reasons, because those were erroneous reasons. So I think the Board looked through and said, okay, we cannot deny based on the judge's speculation about our motives coming as an economic migrant. We cannot deny because she lied on her visa. There's lots of case law that says this is allowed. So then the Board highlighted the sections that they do think support the credibility finding, Your Honor. All right. Let's go to the basis they did cite about the daughter's school. Your Honor, I mean, my argument is this is so irrelevant to the petitioner's main case. I mean, what does the daughter's motivation for going to school have to do with her own case? It's completely tangential. Well, but just a minute. Isn't it the fact, the reason I thought they got into it was because she was helping her daughter do what she needed to do in order to come to the United States and to get the F-1 visa, and therefore, it seemed as if what the daughter was saying made some difference then as to her application. Because if she's helping her daughter get this visa, and it really wasn't for the purpose that she says, because she didn't even do what she said she was going to do, and that looks bad. And on a substantial evidence review, I can't deny that. I don't see, Your Honor, why it looks bad. The daughter had her own assignment. Well, but just a minute. If you say the reason you want this is you want to go to school, but then you don't ever go to school, then it doesn't look like you really are telling the truth. And that may be, Your Honor. And again... And her mother is helping her. No, there was no testimony about the mother helping her, Your Honor. The agent helped her. I believe they hired an agent to arrange for the visa. The mother just knows that her daughter came to the United States, and the mother explained the daughter had some issues with the weather and never went to school. And even if that is not correct, Your Honor, and she never went to school because she came to America to escape persecution in China, that would still be a legitimate reason. And the daughter provided a full declaration explaining all the reasons how she was harmed in China and why she came to America, Your Honor. So, it just seems to me like the board is really reaching and trying to grasp these faint reasons to find the respondent incredible when her own testimony was completely credible. And all the reasons they point out are third parties, third persons, and really nothing about her own testimony was not credible. And she had corroborating evidence for her testimony. She had an abortion certificate. She had an IUD removal. They took issue with that. Again, that is total speculation about why a doctor would have an IUD form in the United States. You're down to just over two minutes. Did you want to reserve? Yes. I don't know if anybody else has any questions, Your Honors, but otherwise, I'd probably reserve the two minutes. All right. You may. Thank you. Mr. Leist. May it please the court, Jeffrey Leist, appearing on behalf of the Attorney General. Substantial evidence supports the agency's determination that the petitioner failed to present a credible claim for asylum, withholding of removal, and protection under the Convention Against Torture. To go to Judge Smith's question about whether it's the entirety of the immigration judge's decision that it's issued here, I think the answer is yes, because the board did not specifically decline to rely on anything. The board certainly can limit its consideration of the immigration judge's decision, and sometimes it does so. But here, both at the beginning and the end of the decision, the board cites the entirety of the decision. Well, then what's the point of the usual Bourbonno recital if we basically treat a decision as a Bourbonno affirmance when they don't say so? I mean, I think that even with the Bourbonno affirmances, there's variations of that. The board can say, matter of Bourbonno, period, end of statement. They can cite matter of Bourbonno, and then go on and add additional reasoning. Or they can do as they did here, where the board cites the entirety of the immigration judge's decision, doesn't specifically say they are not agreeing with any certain part of it, and then just point to certain issues or reasoning for emphasis. But I don't believe that the board's decision to say, for example, and then give examples is meant to be either exclusive or all-encompassing. So I think that it is the entirety of the EIJ's decision here. And I think that the falsity of the petitioner's, you know, the fact that she admitted that she provided false information to get her visa, that is relevant in the credibility analysis. So, Mr. Leis, you're quite right that she did admit to false statements in the visa, but at least some of those seem to fall within the rule that statements made for the immediate purpose of escaping persecution don't count in the analysis. So what statements would you point us to that you think do bear on her credibility? So you're correct, Your Honor, that under ECAMIDE, that statements made to secure your escape from active persecution may not count necessarily against your credibility. This case, the persecution in question happened 17 years before she got the visa. The abortion, allegedly, and the insertion of the IUD was in 1996. She did not get the visa until 2013. So this court in Singh and later in Ani both held that where there's an issue of deception that is not necessary for the flight from active persecution, that it can inform on the credibility. Singh, in fact, said that, you know, being deceptive to immigration officials always is a factor in the hardship analysis. And so I think that with that as the backbone, with this admitted, you know, willingness to deceive immigration officials, that under the totality of the circumstances, the remaining factors that the immigration judge considered, there is substantial evidence to question the petitioner's credibility. How do you respond to their argument, which they just made under my questioning, that these inconsistencies upon which the BIA relied are very minor? Well, I think that under the totality of the circumstances, the court and the agency doesn't look to see if any one factor may be sufficient on its own, but whether it's considered cumulatively and in the totality if they are. So I think that the inconsistencies here, when taken in the totality, when considering that there is this admission that she provided false information to get to the United States, that they do have more impact. So with the third-party omissions, the letters from her husband make no reference to kind of the key aspects of her claim, which is that she was subjected to a forced abortion after a subsequent violation of the family planning policies. Well, but how much work can the third-party omissions do with respect to adverse credibility? I think it can be considered as a factor, Your Honor, and it may be that in a lot of circumstances it would not be, you know, a controlling factor. Well, it just seems to me that if we look at the, whether we're reviewing the board or the IJ's decision, we've got the village director, the father, and the daughter featuring prominently in the adverse credibility determination, none of which necessarily reflects on petitioner's  I think it does when you take into consideration the falsity, the fact that she has admitted that she has deceived immigration officials. Well, so the board, I mean, I take your point that we should be looking to try to read the board as incorporating some parts of the relevant IJ discussion. It's not clear to me how much. Does the falsus determination come through? I don't think the board says anything about the intentionality or materiality of these statements. They did not cite to the falsus and falsus and are you asking us to treat the board as making a falsus determination? I think that it's not that because of that, all things are that that's sufficient in and of itself. But I think it is one factor to be considered, Your Honor, that when we have this baseline of a willingness to deceive, that it does invite closer scrutiny of the remaining claim and the remaining evidence that has been submitted. So it's not, and this court in Ani kind of held that, you know, there may be situations where notwithstanding the fact that you have provided false evidence or testimony to get an immigration benefit, that the remaining evidence in the case may essentially overwhelm that or overcome that. So it's not independently dispositive in this case, but I think it does give kind of more weight to the remaining factors that the immigration filed because when considered in the totality, the fact that these third-party documents omit kind of the core issue of her claim, it does raise suspicion as to whether those events actually happened. And so like the women's director's letter, which was created to, and I don't have the quotation directly in front of me, but the husband's second letter states that the women's director was going to write down your crimes. And the only thing she talked about was the initial family pending violation, which resulted in the fine. There was no reference to a subsequent violation, no reference to any punishments that sprung from that. So it is suspicious that if this document is being created with the intention of documenting your so-called crimes and violating the family planning policies, they would only mention one, and not the more important one. And would mention two other women who are unrelated to the case at all in their violations. There's also issues with the daughter's lack of testimony, as well as her reasons for coming here. And I believe that, again, under the totality of the circumstances... Can I ask, what is the issue with respect to the daughter's reasons for coming here? Because I see how that bears on the daughter's credibility, but how does it relate to petitioners? It's under the totality of the circumstances, Your Honor, because we have, the petitioner herself has admitted that she came to the United States on essentially a falsely procured visa. She also paid for the daughter's visa as well. And so the question, if the daughter came here for other reasons, and if the reasons that the petitioner herself has given for that are questionable, it does reflect on whether or not the petitioner herself, because the petitioner's claiming that she came to the United States because of what happened to her daughter. And so I think... That was, in fact, the reason that she says she was coming because of the basis of her coming from China was her daughter's persecution, right? Correct, Your Honor. And so I think that the daughter's claim is relevant because the petitioner has made it relevant, both for that reason, that that's why she came here, the petitioner also submitted that letter from her daughter describing her own claim, mentioning that the petitioner had discussed this with her back before she got the visa. She did submit her daughter's alleged abortion certificate. So it is relevant because the petitioner has made it relevant. You can't submit evidence just for the good parts, and then if there's any questions that for that, kind of distance yourself from it. So there's also issues with some of the other corroboration, the IUD verification. The immigration judge in this case found it suspect that this document doesn't really have much usage except for in cases where it would be submitted in the family planning asylum claim. It also lacks any indicia of the circumstances around this, as well as there's the abortion You mentioned a moment ago that the daughter's failure to testify. Is that something that Wren would have required the IJ to alert the petitioner to? So Wren and Baderai both come into play if the petitioner is otherwise credible. You have to provide notice and opportunity to prevent corroborating evidence if you're not going to be found not credible. In this case, the daughter's testimony was brought up earlier in the proceedings by petitioner's former counsel, and there was a discussion that went on of, you know, well, should she come out to Hawaii or could she do it telephonically? So it was at issue. So even if it wasn't mentioned again by the immigration judge at the merits hearing, the desirability of the petitioner's daughter to testify had been established earlier in the proceedings. I don't know if there are further questions. Thank you, Mr. Leist. Mr. Yofey, rebuttal? Yes, your honor. Some points to address, your honor. I would point out that in their own brief, DHS Oil, they did not argue. They only argued the points that the board specifically identified. They did not re-argue the other parts of the judge's decision, such as the falsity part, your honors. So how can they now try to argue that it was a whole decision that was to make? If they, on an adverse credibility determination, if in fact they have a false statement like they have here, they're going to take those parts of the determination, if you will, that are most easily supported and argue that we don't need anything more because minor inconsistencies are enough and because we look at the totality, we've already got one false statement. And so they don't need to argue everything. They just have to argue what they want to argue, what is necessary to make their case. Right. But one would think, your honor, if that's their best argument, that's the argument they would advance instead of focusing on the weaker tangential arguments. Our second argument is that, as pointed out, there were no further lies. The only lies she admitted to were using an agent to help her get the visa. Under the case law, this is allowed to escape China as long as there's no other lies, material lies in any other interactions. Well, can you address, I mean, your friend on the other side points out that the persecution happened a long time before this, and he cited Ani and Singh as suggesting that in these circumstances a lie does count against her credibility. So what's your response to that? We would completely disagree. There is no, under those rubric of cases, they do not discuss timing, your honor. It's completely possible that this provincial petitioner knew nothing about asylum and applied as soon as she discovered that asylum was possible for her, and so she had to lie during that time after she learned about asylum in order to secure her escape from China. So when you say it's possible, there's not evidence that supports that. You're just saying that that's a thing that could be true? Yes, your honor. She was not specifically asked when she learned about asylum. Just briefly, if the court allows me, the omissions, your honor, are being taken out of context. Those two letters were not written to discuss the litany list of what happened to her in  As I argued in my brief, those two letters, three letters, all had specific reasons. They were addressing specific things. They were not a long list of things she suffered in China, and that's why those omissions are being taken completely out of context. And lastly, the daughter was three years old. There was very limited amount of testimony that would have been helpful. She was three years old when her mother was forced to have an abortion, so she only could have testified about her own reasons for coming, and she already did so in the letter. Thank you, honors. Thank you very much. We thank both counsel for their helpful arguments, and the case is submitted.
judges: SMITH, MILLER, JOHNSTONE